## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

|  |  |
|---|---|
| ALAN R. DONOHO, and BANKRUPTCY ESTATE OF ALAN R. DONOHO, CASE NO. 10-10403,<br><br>*Plaintiffs*,<br><br>vs.<br><br>BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., TRUSTEES OF THE IBEW #271 NECA HEALTH AND BENEFIT FUND; and THE WILLIAM C. EARHART COMPANY,<br><br>*Defendants*. | Case No. 11-1289-EFM |

## MEMORANDUM AND ORDER

Plaintiff Alan R. Donoho underwent an L1-L2 fusion back surgery in April 2009, requiring an extended inpatient stay and months of additional care. Donoho mistakenly believed that his COBRA[1] continuation health insurance would cover his medical expenses. Donoho and Bankruptcy Estate of Alan R. Donoho ("Plaintiffs") subsequently brought this state-court suit against the various administrators of Donoho's health benefit plan. Defendants Blue Cross and Blue Shield of Kansas, Inc., The William C. Earhart Company, and Trustees of the IBEW #271 NECA Health and Benefit Fund ("Defendants") removed this action from the District Court of Ford County, Kansas, on the basis that Plaintiffs' claims are completely preempted by the

---

[1]    Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. §§ 1161 et seq. (2006).

Employee Retirement Income Security Act of 1974[2] and thus present a federal question. Defendants now request that the Court dismiss Plaintiffs' Petition under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.  Because the Court finds that Plaintiffs do not possess the requisite standing under ERISA to support removal, the Court now remands the suit to state court without reaching the merits of Defendants' motion to dismiss.

## I.       Factual and Procedural Background[3]

### A.       Defendants managed Donoho's insurance coverage.

Alan R. Donoho is a former member of the International Brotherhood of Electrical Workers Local Union 271 ("IBEW #271").  As a Union chartered to represent and secure benefits for electrical workers within the Wichita, Kansas, region, IBEW #271 created the IBEW #271 NECA Health and Benefit Fund ("the Fund") to provide employer-paid health insurance benefits for eligible Union members.  The Fund is financed through employer contributions made pursuant to collective-bargaining agreements that IBEW #271 negotiates with employers of IBEW #271 members.  Trustees of the IBEW #271 NECA Health and Benefit Fund ("Trustees") purchased a group contract with Blue Cross and Blue Shield of Kansas, Inc. ("BC/BS") to provide and administer health insurance coverage to eligible IBEW #271 members.  During the period of Donoho's IBEW #271 membership, The William C. Earhart Company ("W.C. Earhart") acted as a third-party administrator of the Fund and cooperated with BC/BS to provide Donoho's continuation coverage.  Donoho, therefore, was a member of IBEW #271 and insured under the Fund, with the Fund being administered by W.C. Earhart and the insurance coverage administered by BC/BS.

---

[2]    29 U.S.C. §§ 1001 et seq. (2006).

[3]    The following facts are taken from the pleadings.  The facts are either uncontroverted or, if controverted, construed in the light most favorable to the Plaintiffs as the non-moving party.

**B.      Defendants refused to cover Donoho's medical expenses.**

After his employment was terminated in February 2009, Donoho qualified to receive COBRA continuation health care coverage under the Fund.  Sometime before April 2009, W.C. Earhart informed BC/BS of Donoho's eligibility for COBRA coverage.   After electing continuation coverage, Donoho paid his share of the cost of the health insurance premium to W.C. Earhart.  But by March 2009, W.C. Earhart maintained that Donoho was either late or missed one month of payment to the Fund.  Because the untimely or missed payment cancelled Donoho's coverage under the plan, W.C. Earhart allegedly instructed BC/BS that the missed payment cancelled Donoho's coverage beginning in April 2009.

Donoho scheduled and received medical services after April 2009, however, believing that his medical expenses were covered under the terms of his Comprehensive Major Medical Group Certificate with BC/BS.  On April 6, 2009, Donoho underwent an L1-L2 fusion back surgery, followed by an extended inpatient stay at Kansas Spine Hospital in Wichita, Kansas. Throughout the remainder of the summer, Donoho received additional care from several medical care providers.  Before surgery, Donoho requested that BC/BS confirm the extent of coverage. In response, several BC/BS representatives informed Donoho that his coverage was in effect and that the services and extended inpatient stay were covered under the plan.  And on May 6, 2009, Donoho received a precertification letter from BC/BS that again confirmed that Donoho's impending medical expenses were approved and covered.  But on August 12, 2009, Donoho received notice in a letter from BC/BS that Donoho's plan coverage was purportedly cancelled and ineffective as of April 1, 2009.  Before sending this letter, neither BC/BS nor W.C. Earhart

informed Donoho that his continuation coverage had expired prior to the surgery and subsequent medical care.

**C.     Defendants removed Plaintiffs' suit to federal court on preemption grounds.**

In response to the dispute over Donoho's continuation insurance coverage, Plaintiffs filed suit in the District Court of Ford County, Kansas, to recover damages, fines, and penalties under several state common law causes of action. Plaintiffs brought actions for common law negligence and promissory and equitable estoppel against all Defendants,[4] and negligent misrepresentation against BC/BS.  Defendants, however, removed Plaintiffs' suit on the basis that Plaintiffs' state-law claims are completely preempted by ERISA, and thus present a federal question in the form of a claim under 29 U.S.C. § 1132(a)(1)(B) to recover benefits and enforce rights under an employee welfare benefit plan regulated by ERISA.  The Court allowed removal on that preliminary basis, and now must consider Defendants' motions to dismiss.

## II.     Analysis

**A.     Plaintiffs must state a claim for which relief may be granted by *this* Court in order to survive Defendants' motions to dismiss.**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.' "[5]  In determining whether a claim is facially plausible, the court must draw on its judicial experience and common sense.[6]  All well pleaded facts in the complaint are assumed to be true and are viewed in the light

---

[4]     The Court will not consider Count IV of Plaintiffs' Petition as Plaintiffs have stipulated to dismissal of Count IV (Doc. 44).

[5]     *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[6]     *Iqbal*, 129 S.Ct. at 1950.

most favorable to the plaintiff.[7]  Allegations that merely state legal conclusions, however, need not be accepted as true.[8]  "[T]he complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."[9]

Defendant BC/BS's Motion to Dismiss references materials outside Plaintiffs' Petition, including the Comprehensive Major Medical Group Certificate ("Certificate") issued by BC/BS to Plaintiff Donoho.  Generally, for the court to consider matters outside the complaint, Rule 12(b) provides that the court should treat the motion to dismiss as a summary judgment motion.[10] The court, however, "may consider documents referred to in the complaint"—without converting the motion to dismiss to motion for summary judgment—"if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[11]   Because the Court finds the Certificate to be: (1) an indisputably authentic copy of the "plan" referenced by Plaintiffs' Petition and (2) the basis for the disputed health coverage and for Plaintiffs' claims, the Court will analyze Plaintiffs' Petition and the Certificate under Rule 12(b)(6) standards.

**B.    The Court cannot decide the effect of ERISA preemption on Plaintiffs' state law claims.**

As a threshold matter, Plaintiffs argue that for ERISA preemption to apply—and this Court to thus have jurisdiction to hear the case—the Court must make a determination that the plan at issue is (1) governed by ERISA and (2) self-funded.  Plaintiffs further argue that because

---

[7]    *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[8]    *See Hall v. Bellmon*, 935 F.2d 1106, 1100 (10th Cir. 1991).

[9]    *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[10]    *See Carter v. Stanton*, 405 U.S. 669, 671 (1972); *Foremaster v. City of St. George*, 882 F.2d 1485, 1491 (10th Cir. 1989).

[11]    *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

these determinations require evidence beyond the Petition and the Certificate, the Court must deny Defendants' motions to dismiss. Defendants, however, respond that Plaintiffs' Petition and the Certificate provide sufficient evidence to conclude that the plan is governed by ERISA. Additionally, Defendant BC/BS argues that ERISA and its preemption provisions apply to any employee benefit plan regardless of whether the plan is self-funded. Because the Court finds that the record does not provide a sufficient basis for federal question jurisdiction to support removal from state court, the Court will assume without deciding that Donoho's benefits plan was one that falls within the purview of ERISA and that its funding status has no effect on preemption.

C.    **Plaintiffs' state common law claims were improperly removed on the basis of complete preemption because Plaintiffs lack standing to sue under § 502 of ERISA.**

Assuming Donoho's health benefit plan is governed by ERISA, including the provision discussing preemption, the Court must now consider whether Plaintiffs' claims are completely preempted by ERISA and thus support removal. The Court may only hear cases properly brought before it due to diversity of parties or, as alleged in this case, the presence of a federal question.[12] "The presence or absence of federal question jurisdiction is governed by the 'well-pleaded complaint rule . . . .' "[13] That rule permits a defendant to invoke federal question jurisdiction under 28 U.S.C. § 1331—and thus remove a plaintiff's claims on that basis—only if a federal question appears on the face of plaintiff's properly pleaded complaint.[14] A federal defense is insufficient to invoke removal under federal question jurisdiction.[15] The well-pleaded

---

[12]    *See* 28 U.S.C. §§ 1331–32 (2006); *Felix v. Lucent Technologies, Inc.*, 387 F.3d 1146, 1154 (10th Cir. 2004) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)).

[13]    *Caterpillar Inc.*, 482 U.S. at 392.

[14]    *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 153–54 (1908); *see also Hansen v. Harper Excavating, Inc.*, 641 F.3d 1216, 1220 (10th Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S. Ct. 574 (2011).

[15]    *Mottley*, 211 U.S. 149, at 153–54.

complaint rule, therefore, "makes the plaintiff the master of the claim," and "he or she may avoid federal jurisdiction by exclusive reliance on state law."[16]

The Supreme Court, however, has recognized an exception or "independent corollary" to the well-pleaded complaint rule known as the "complete preemption" doctrine.[17]  The doctrine of preemption states that if a plaintiff sues on a state cause of action in federal court, but federal law conflicts with the state law, the federal law may invalidate all or part of the state law claim. Generally, this conflict preemption cannot support removal because, as a defense, it does not meet the requirements of the well-pleaded complaint rule.[18]  But *complete* preemption is an exception to that rule.   Complete preemption is distinct from conflict preemption in that complete preemption occurs in certain areas of the law in which Congress has expressed an intent to regulate an entire class of cases, such as usury claims against banks, employee benefits, and labor relations.[19]  If Congress has completely preempted a state law cause of action, claims

---

[16]     *Felix*, 387 F.3d at 1154.

[17]     *Id.*; *Hansen*, 641 F.3d at 1220.

[18]     *See Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 19 (1983).

[19]     In *Avco Corp. v. Machinists*, 390 U.S. 557 (1968), the Supreme Court held that the Labor Management Relations Act completely preempted state law claims for breach of a labor-management contract.  The Court held that the applicable federal provision, section 301 of the LMRA, furnished the substantive law applicable to labor disputes, 390 U.S. aat 559–69, and "the preemptive force of § 301 is so powerful as to displace entirely any state cause of action."  *Franchise Tax Bd.*, 463 U.S. at 23.  This recognition of Congress's intent to completely preempt state law when enacting the LMRA is known as the *Avco* principle, and has become an essential element of the Court's analysis as to whether complete preemption exists.  *See, e.g.*, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 9–10 (holding that the National Bank Act completely preempts state law causes of action for usury because the relevant provisions of the Act "supersede both the substantive and remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive, even when a state complaint . . . relies entirely on state law"); *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64–66 (1987) (holding that § 502 of ERISA completely preempts certain benefits claims because that provision "closely parallels that of § 301 of the LMRA" includes a "specific reference to the *Avco* rule").

based on state law cease to be state law claims and transform to federal claims that arise under federal law, irrespective of the requirements of the well-pleaded complaint rule.[20]

In the seminal case of *Metropolitan Life Insurance Co. v. Taylor*, the Supreme Court found that Congress enacted ERISA with the intent to completely preempt state law regarding certain claims to employee benefits.[21]   The Supreme Court held that the plaintiff's state tort claims were completely preempted by ERISA's civil enforcement provision found in § 502, which says: "The district courts of the United States shall have jurisdiction, without respect to the amount in controversy or the citizenship of the parties, to grant the relief provided for in subsection (a) of this section in any action."[22]   The Court held that Congress's enactment of § 502(a) expressed its "clear intention" to make civil suits to recover benefits due to participants and beneficiaries "federal questions for the purposes of federal court jurisdiction."[23]

But removal of a state suit on complete preemption grounds requires a finding that the plaintiff had standing to sue under the preempting federal law at the time of filing.[24]   Therefore, before the Court may consider whether Plaintiffs' state law causes of action are completely

---

[20]   *See Beneficial Nat'l Bank*, 539 U.S. at 11 (holding that a state-law claim for usury against a national bank could be removed under 28 U.S.C. § 1441 because the National Bank Act provides the exclusive cause of action for such claims, and thus a claim of usury against a national bank is inherently a claim under federal law).

[21]   *Metro Life. Ins. Co.*, 481 U.S. at 66.

[22]   *Id.* at 65–66 (quoting 29 U.S.C. § 1132(f)).

[23]   *Id.* at 66.  It should be noted that circuit courts, including the Tenth Circuit, have drawn a distinction between complete preemption under § 502(a) of ERISA, and conflict preemption introduced in § 514.  *See, e.g.*, *Felix*, 387 F.3d at1157 ([A] state law claim will convert to a federal claim [and will thus be removable] only if the claim is preempted by ERISA [under § 514] *and* within the scope of ERISA's civil enforcement provisions [§ 502(a)]." (Citation omitted)).  Section 514 of ERISA states that "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."  29 U.S.C. § 1144(a).  If a state law claim for benefits falls within those claims covered by § 514 and not § 502(a), the resultant conflict preemption is not sufficient to support removal.

[24]   *See Felix*, 387 F.3d at 1158 (stating that a plaintiff "must have standing to sue under § 502(a) before his or her state law claim can be recharacterized as arising under federal law subject to federal jurisdiction under the doctrine of complete preemption").

preempted by § 502(a), the Court must determine whether Plaintiffs have standing to bring a federal claim under that section of ERISA.[25]  Because complete preemption under ERISA is limited to claims brought under § 502(a), and that provision, in turn, is limited by its terms to claims brought by certain enumerated parties, "the subject-matter jurisdiction of the district court depends on whether [Plaintiffs] would have had standing to bring [their] suit under § 502(a) of ERISA" at the time of filing.[26]

"ERISA carefully enumerates the parties entitled to seek relief under § 502; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action . . . .  A suit for similar relief by some other party does not 'arise under' that provision."[27] Because no party asserts that Donoho is a beneficiary or a fiduciary, the Court will analyze Plaintiffs' standing exclusively on the basis of Donoho's status as a participant.

ERISA defines a "participant" to mean:

> [A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.[28]

A plaintiff is a "participant," as the Supreme Court has further construed the term, if the plaintiff falls within one of the following categories:  (1) an employee currently in covered employment; (2) an employee reasonably expected to be in covered employment; (3) a former employee with a reasonable expectation of returning to covered employment; or (4) a former employee with a

---

[25]   *See id.* at 1158; *Hansen*, 641 F.3d at 1221–22.

[26]   *Hansen*, 641 F.3d at 1221–22, 1225.

[27]   *Id.* at 1222 (quoting *Franchise Tax Bd.*, 463 U.S. at 27).

[28]   28 U.S.C. § 1002(7) (2006).

colorable claim to vested benefits, which is to say a colorable claim that (a) he or she will prevail in a suit for benefits, or (b) his or her eligibility requirements will be fulfilled in the future.[29]

The Court, however, cannot apply the Supreme Court's construction of the term "participant," to Plaintiffs' circumstances without adapting the definition.[30]   The Supreme Court's construction is directed towards the first category of possible participants enumerated by Congress—"any employee or former employee of an employer"—rather than the second—"any member or former member of an employee organization."   And that definition of "participant" is most appropriately applied when the employee benefit plan is established or maintained by an employer rather than an employee organization.   Because an employee organization established and maintained Donoho's benefit plan,[31] and because Congress clearly intended to extend participant status to certain individuals involved with employee organizations,[32] the Court conforms the Supreme Court's gloss on "participant" to include situations involving "any member or former member of an employee organization."   Donoho is therefore a participant under ERISA if he falls within one of the following categories: (1) a currently covered member of the employee organization; (2) a member of the employee organization reasonably expected to

---

[29]   *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117–18 (1989), *accord Hansen*, 641 F.3d at 1223.

[30]   Even if the Court applied the Supreme Court's employer-employee test to determine participant status under ERISA, the Court would reach the same conclusion—Donoho does not possess participant status.  Based on the limited assertions in Plaintiffs' petition regarding Donoho's employer, Donoho is unlikely to qualify for participant categories (1)–(3).  Plaintiffs' petition alleges that "Mr. Donoho's employment was terminated," and is silent regarding Donoho's employment status at the time of the suit's filing or likelihood to return to employment. Categories (1), (2), and (3), therefore, are not satisfied.  Plaintiffs would therefore have standing to bring a claim under ERISA only if Donoho may be characterized as a former employee with an arguable and non-frivolous claim that he either (1) will prevail in a suit for benefits or (2) will satisfy the eligibility requirements for coverage.  For the same reasons discussed *infra* Parts II(C)(3)–(4), these categories cannot apply to Donoho.

[31] Plaintiffs allege that "the IBEW #271 NECA Health and Benefit Fund…was *established* [by IBEW #271] for members of the International Brotherhood of Electrical Workers, Local # 271."  Doc. 1-1, Pet. ¶ 6 (emphasis added).  The IBEW #271 is an employee organization.  *See* 29 U.S.C. § 1002(4).

[32]   *See* 29 U.S.C. § 1002(7) (defining "participant" with explicit reference to employee organizations).

become covered after meeting the eligibility requirements of the organization; (3) a former member of the employee organization with a reasonable expectation of resuming membership and coverage; or (4) a former member of the employee organization with a colorable claim to vested benefits.  Finally, to satisfy the "colorable claim" requirement, a claimant need only present an "arguable and non-frivolous" claim for benefits.[33]

> **1.      *Donoho is not a current member of an employee organization and cannot possess participant status under categories (1) or (2).***

Applying the adapted standard to this case, and viewing the facts in a light most favorable to Plaintiffs, there is no plausible claim to be made that, as of the time of filing the complaint, Donoho possessed participant status.  The first two categories—a currently covered member of an employee organization and a member of an employee organization reasonably expected to become covered—cannot apply to Donoho, because Plaintiffs alleged only that "Plaintiff Alan Donoho *was* a member of IBEW #271" at the time of filing.[34]  It would be inconsistent with established principles of construction for the Court to read Plaintiffs' allegation to mean that Donoho is a current member of IBEW #271.   And because the Court finds no evidence that Donoho continued his membership in IBEW #271, the Court must accept the characterization of Donoho's membership as alleged in the Petition.  Donoho cannot fulfill either category one or category two for participant status.

> **2.      *Donoho has no reasonable expectation of resuming Union membership and cannot possess participant status under category (3).***

To possess standing, therefore, Donoho must fall within one of the latter two categories for former members of an employee organization.  Based on the record in this case, the Court

---

[33]    *Hubbert v. Prudential Ins. Co. of America*, 105 F.3d 669, 1997 WL 8854 at *3 (10th Cir. Jan. 10, 1997).

[34]    Doc. 1-1, Pet. ¶ 9 (emphasis added).

cannot say that, as of the filing date of Plaintiffs' Petition, Donoho had any expectation, reasonable or otherwise, of resuming membership and coverage. Nothing in the Petition or submissions of the parties gives any indication that Donoho ever expected to resume membership or coverage with IBEW #271 or sought reinstatement.[35] Consequently, Donoho does not fall within the third category of ERISA participants.

### 3. Donoho has no claim that he will satisfy the eligibility requirements for coverage and cannot possess participant status under category (4)(a).

To have standing as a former member of an employee organization, Donoho must have an arguable and non-frivolous claim to vested benefits under either subparts of the fourth category. Because the record does not contain information regarding the eligibility requirements for coverage under the IBEW #271 NECA Health and Benefit Fund, the Court is without context to consider whether, at the time of the filing of the suit, Donoho possessed a colorable claim that he could satisfy IBEW #271's eligibility requirements for coverage. Considering that Plaintiffs characterized Donoho's participation in the IBEW #271 in the past tense, the Court is inclined to believe that it is unlikely that Donoho would fulfill such requirements.

### 4. Donoho has no claim that he will prevail in a suit for benefits under § 502 and cannot possess participant status under category (4)(b).

Donoho has no remedy under § 502(a)(1)(B) as a former member of an employee organization with an arguable and nonfrivolous claim for benefits. "Here, Plaintiffs do not seek 'to recover benefits due to [them] under the terms of [their] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan.'

---

[35] *See, e.g., Hansen*, 641 F.3d at 1226 (finding that a plaintiff had no reasonable expectation of returning to covered employment where the record did not contain "any hint that either [the former employee] or [the former employer] ever expected to resume their employment relationship"); *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 474 (10th Cir. 1990) (finding that a plaintiff who did not seek reinstatement could not have a reasonable expectation or returning to covered employment).

Neither Plaintiffs nor Defendants contend that Plaintiffs are entitled to the additional benefits under the plan."[36]   The provisions of COBRA and the insurance policy Certificate issued to Donoho clearly indicate that coverage would terminate as a result of a delinquent or unpaid premium.[37]   Records indicate "Plaintiff was late and/or missed one month's payment to the plan."[38]   "Plaintiffs concede that Donoho's coverage (and attendant participation in the plan as a participant) was cancelled prior to the time in which the [alleged] negligence and negligent misrepresentation occurred," and due to the late/missed premium payment "his rights and duties under the plan were effectively terminated."[39]   Defendants also suggest that because of Donoho's failure to submit premium payments on a timely basis, the subsequent termination of Donoho's coverage and denial of Donoho's claim for medical expenses were justified.[40]   "Mr. Donoho was *no longer a participant* in the ERISA plan."[41]   And because "Mr. Donoho can recover only those benefits that are 'due to him under the terms of his plan' " in a federal claim under ERISA, Defendants suggest that "here, such a claim would necessarily fail, based on the admissions of [Plaintiffs]."[42]   Thus, Donoho may not recover benefits under the terms of the plan and does not have a "colorable" claim for vested benefits under § 502(a)(1)(B).

---

[36]   *Felix*, 387 F.3d at 1162 (quoting 29 U.S.C. § 1132(a)(1)) (holding, "Because Plaintiffs are not entitled to the additional benefits at issue 'under the terms of [their] plan,' their state law claims do not fall within the scope of ERISA § 502(a)(1), and [the court's] subject matter jurisdiction cannot be based upon the doctrine of complete preemption.").

[37]   *See* 29 U.S.C. § 1162(2)(C) (2006); Doc. 28-3 at 59, 63.

[38]   Doc. 1-1, Pet. ¶ 13.

[39]   Doc. 33, p. 4; Doc. 34, p. 4; Doc. 35, p. 4.

[40]   Doc. 46, p. 6.

[41]   *Id.* at 5 (emphasis added).

[42]   Doc. 45, p. 6; Doc. 47, p. 4.

-13-

Similarly, Donoho has no remedy under § 502(a)(2).  Section 502(a)(2) authorizes a court to redress breaches of fiduciary duty through "appropriate relief" under 29 U.S.C. § 1109.  Even if the Court were to accept that Defendants may be fairly categorized as fiduciaries within the statutory definition provided by ERISA, "the United States Supreme Court has held that § 1132(a)(2) does not authorize a participant or beneficiary to bring a private right of action for damages to redress a breach of fiduciary duty."[43]  Under 29 U.S.C. § 1109, a fiduciary to a benefit plan who breaches his or her fiduciary duty is "liable to . . . such plan" directly—not to the plan's participants individually.[44]  Plaintiffs, who request personal damages, therefore, do not have an arguable and non-frivolous claim for benefits under § 502(a)(2).

Plaintiffs also have no remedy under § 502(a)(3), which authorizes a court to redress violations of ERISA through injunction or "other appropriate equitable relief."  Regardless of the theory that Plaintiffs may advance to bring a claim under § 502(a)(3)(B), and regardless of whether Plaintiffs may seek relief by judgment, injunction, or declaration, courts have routinely held that this section does not authorize an award of compensatory damages.[45]  Plaintiffs seek damages against Defendants for satisfaction of medical expenses incurred.  Because Plaintiffs

---

[43]   *Mass. Mut. Life Ins. Co v. Russell*, 473 U.S. 134, 148 (1985), *accord Alexander v. Anheuser-Busch Companies, Inc.*, 990 F.2d 536, 540 (10th Cir. 1993).

[44]   *Walter v. Int'l Ass'n of Machinists Pension Fund*, 949 F.2d 310, 317 (10th Cir. 1991).

[45]   *See Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993) (holding that relief under § 502(a)(3)(B) is limited to only "those categories of relief that were *typically* available in equity (such as injunction, mandamus, and restitution, but not compensatory damages)"); *Callery v. United States Life Ins. Co. in the City of New York*, 392 F.3d 401, 406 (10th Cir. 2004) (affirming dismissal of a plaintiff's breach-of-fiduciary-duty claim for violation of notice requirements because the claim was "most accurately construed as one for reliance damages" and thus, relief the requested was "compensatory and not typically available in equity"); *see also Calhoon v. Trans World Airlines, Inc.*, 400 F.3d 593, 598 (8th Cir. 2005) (affirming the dismissal of a claim under § 502(a)(3)(B) for "restitution" of medical bills and costs after finding that such relief is "in the nature of legal relief because it seeks to impose personal liability on the defendant, is measured by the plaintiff's loss, and does not involve traceable funds that belong to the plaintiff and are being unlawfully held by the defendant").

request relief which no court is authorized to award as "appropriate equitable relief," Plaintiffs do not have a "colorable" claim for benefits under § 502(a)(3)(B).

In sum, the Court cannot say that Donoho has fulfilled the requirements for participant status to obtain standing to bring a plausible claim under § 502(a). The record does not provide a sufficient basis for federal question jurisdiction, and thus removal of Plaintiffs' state-court suit on the basis of complete preemption was improper. Without subject matter jurisdiction, the Court must decline to address the parties' remaining arguments and remand the case to the District Court of Ford County, Kansas, for further proceedings.

**IT IS THEREFORE ORDERED** that Plaintiffs' case is REMANDED to the District Court of Ford County, Kansas, for further proceedings.

**IT IS FURTHER ORDERED** that Defendant William C. Earhart Company's Motion to Dismiss for Failure to State a Claim (Doc. 26) is hereby DENIED AS MOOT.

**IT IS FURTHER ORDERED** that Defendant Blue Cross Blue Shield of Kansas's Motion to Dismiss for Failure to State a Claim (Doc. 27) is hereby DENIED AS MOOT.

**IT IS FURTHER ORDERED** that Defendant Trustees of the IBEW #271 NECA Health and Benefit Fund's Motion to Dismiss for Failure to State a Claim (Doc. 29) is hereby DENIED AS MOOT.

**IT IS SO ORDERED**.

Dated this 26th day of July, 2012.


*Eric F. Melgren*

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

-15-